## Case No. 14,431.

### UNITED STATES v. ALLEN.

[1 Brunner, Col. Cas. 94;[1] 4 Day, 474.]

Circuit Court, D. Connecticut. April, 1810.

PENAL ACTION—EMBARGO ACT—ACTION—AMOUNT OF PENALTY.

An action of debt will lie in favor of the United States to recover the penalty given by the embargo act [2 Stat. 451], for being knowingly concerned in a foreign voyage in violation of that act. If in such action the defendant plead nil debet, and the issue be found against him, the jury, and not the court, are to fix the amount of the penalty.

[Cited in Walsh v. U. S., Case No. 17,116; Stockwell v. U. S., 13 Wall. (80 U. S.) 543.]

[Appeal from the district court of the United States for the district of Connecticut.]

This was an action of debt brought to the district court, alleging that the defendant [Robert Allen] was master of the schooner Amazon, was concerned in fitting her out, and that by his procurement she escaped without any clearance or permit, and departed from the port of New Haven, and proceeded to a foreign port, contrary to the provisions of the embargo acts, particularly the first supplementary act, approved January 9, 1808, and demanding the penalty of $20,000. The defendant pleaded nil debet, and the jury found a general verdict that "the defendant doth owe," without assessing damages. On this verdict the court assessed damages, and rendered judgment for the amount against the defendant.

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

An appeal being taken to this court, Mr. Staples, for the appellant, urged a reversal of the judgment below on two grounds: 1. That an action of debt is not sustainable in this case. Peake, Ev. 272; 1 Chit. Pl. 105. 2. That if sustainable, the jury, and not the court, ought to have assessed the damages.

The District Attorney, contra.

Action of Debt—Penalties and Forfeitures Recoverable by. The action of debt will lie at he suit of the United States to recover the penalties and forfeitures imposed by statutes. Stockwell v. U. S., 13 Wall. [80 U. S.] 543; Walsh v. U. S. [Case No. 17,116], citing above case.

## Case No. 14,432.

### UNITED STATES v. ALLEN et al.

[7 Int. Rev. Rec. 163.]

Circuit Court. E. D. New York. 1868.

VIOLATION OF INTERNAL REVENUE LAWS—BONDS FOR WITHDRAWAL OF SPIRITS—DUTIES OF REVENUE OFFICERS—FRAUDS AGAINST THE UNITED STATES — CRIMINAL LAW — EVIDENCE OF GOOD CHARACTER.

[1. The requirements of the internal revenue laws in respect to the taking of bonds, or the withdrawal of spirits from warehouse, cannot be dispensed with by any revenue officer because he deems the government sufficiently protected by other provisions. Nor can any officer excuse himself from a strict compliance with all the statutory regulations by pleading previous practice by other officers in that respect.]

[2. A deputy collector, who accepts a bond for the withdrawal of whiskey from a warehouse, knowing that the signatures thereto have been forged by another, or who, knowing that they were made by another, certifies upon the bond, as required by the regulations, that the persons whose names are signed thereto personally appeared before him and signed the same in his

presence, is guilty of executing, or conniving in the execution of, a document in fraud of the internal revenue laws, and is subject to the punishment prescribed by the act of July 13, 1866, § 42 (14 Stat. 98).]

[3. In order to constitute a conspiracy to defraud the United States, under section 30 of the act of March 2, 1867 (14 Stat. 484), it is not necessary that there should be a pecuniary consideration, or a definite, absolute contract between the parties. It is sufficient if there are a concert of action and a concert of intent.]

[4. Previous good character is only to be considered, in favor of defendants, when the jury have a doubt on the question of guilt. If they have no doubt, defendants can take no benefit from proof of good character.]

This was an indictment containing seven counts,—four under section 42 of the act of July 13, 1866 [14 Stat. 163], charging the defendants [John S. Allen and Richard C. Enright] with executing, and procuring to be executed, certain fraudulent bonds for the withdrawal of whiskey from warehouse, and three counts under section 30 of the act of March 2, 1867 [14 Stat. 484], charging them with conspiracy to defraud the revenue. One of the defendants, Allen, was a deputy collector of internal revenue. The trial lasted several days, and a great many witnesses were examined.

Mr. Tracey, U. S. Dist. Atty., and Mr. Allen, Asst. Dist. Atty.

E. L. Sanderson, for Allen.

Underhill & Hollis, for Enright.

BENEDICT, District Judge (charging jury). This case, important as it is, has occupied a period of time quite disproportioned, as it appears to me, to any difficulties attending the questions of law or of fact which it involves. As to these questions of law there is no room for doubt. Whether there is any doubt about the facts is for you to say, for upon you alone is the responsibility of passing upon the facts. As has been said by the counsel, there are seven counts in this indictment—seven charges, each complete in itself—any one of which having been passed against either of the defendants, requires a verdict of guilty against such defendant. These charges may be divided into two classes. The first four belong to one class, all founded upon the same portion of the statute. The remaining three, which may be called the conspiracy counts, are all founded upon another and different section of the statute. They are all of the same nature, however, being all misdemeanors, and all relate to a single feature of the internal revenue law, the provisions for distiller's bonds. The nature of these bonds has been fully explained to you by counsel, their importance to a proper administration of the internal revenue law being manifest. But whether important or not they are required by law. Being so required, no man, whether he be collector, or deputy collector, or commissioner of internal revenue, or secretary of the treasury, can dispense with them. The proposi-

tion that it is competent for any officer of the revenue to disregard a requirement of the law because he thinks it useless, or because he deems the government protected by other provisions, finds no favor in this court. It is an idea that should never have been entertained, and must be at once abandoned. The duties of the citizen and of the officer in regard to these bonds are plainly set forth. About them there can be no mistake, and these duties must be performed. So, too, that other proposition so often urged in your hearing upon this trial, that the duty of one officer may be measured by the practice of some other officer must be dismissed.

The question of this case, and of every case when it arises, is, what did the defendants do, and with what intent? And what they were in the habit of doing in the Second collection district, or what persons formerly in office were in the habit of doing, is a matter wholly immaterial. What these defendants are charged in the first four counts with having done, is this, that they executed original certain false, fraudulent bonds or fraudulently caused them to be executed, or connived at the execution thereof. This is the charge set forth in each of the first four counts of the indictment. They differ from each other only as to the particular bond which is charged as having been executed with fraudulent intent. If any of these charges are proven, they are all of them made an offence by this 42d section, which I propose to read: "Be it further enacted, that any person or persons who shall execute or sign any false or fraudulent bond, permit, entry, or other document, required by law or regulation, or who shall fraudulently permit the same to be executed, or who shall connive at the execution thereof, by which the payment of any internal revenue tax shall be avoided, * * * or which shall in any way be used or attempted to be used in fraud of the internal revenue laws and regulations"— this constitutes the offence. In this case these bonds are bonds required by law, and, upon the evidence as given, they were used— if they were false and fraudulent—in fraud against the internal revenue law. The question then raised as to these first four counts is, did the defendants or either of them execute or sign the bond, or fraudulently procure or connive at the execution? As to Enright, the charge is that he forged the signatures upon these bonds. If he did, he must be found guilty. Whether he did is for you to say, the evidence, the bonds, the absence of the man who did, if he did not, the nonproduction of the subscribing witnesses, all may be considered by you in determining this question. It is not pretended that Allen forged any name upon any of the bonds, but it is charged that he connived at the execution of the bonds. Mr. Allen was the deputy collector of this district who accepted these bonds. If Allen knew that these signatures had been made by Enright, then when he ac-

cepted the bonds without objection he connived at the execution. The bonds are not only charged to be false, but fraudulent, that is, constructed with false description of powers, false enumeration of property united with intent to make a worthless bond appear to be valid. That this is true seems quite clear, and if either Allen or Enright knew them to be fraudulent, they are upon the admitted evidence of these acts, guilty of having connived at the execution of them. The certificate upon form 33 is a document required by regulations. It was executed by Allen alone upon each of the bonds and filed as part of the papers. In it he certifies as follows: "Personally appeared before me Frederick Adams, who being duly sworn, says," etc. If the signatures upon any of the bonds were not, in fact, placed there in his presence, he made a false document, and is guilty. If you find ·that Enright wrote any of the names of the sureties upon any of the bonds, then Allen must be guilty, for if Allen saw him commit the forgery, and then accepted the instrument, he connived at its execution. If Enright signed the name and Allen did not see him sign it, then he made a false certificate, for he says he saw it signed.

The remaining counts charge a conspiracy, a corrupt agreement of understanding between these persons that false or fraudulent bonds should be executed and accepted. These offences are framed under a different section of the act of 1867, the 30th, a very sweeping section—a very important section—which provided that if any two or more persons conspire either to commit any offense against the laws of the United States, or to defraud the United States in any manner whatever, and one or more of them shall do any act to effect the object thereof, the parties concerned in the conspiracy shall be deemed guilty of a misdemeanor. The gist of this offense ˙ is combination between two or more parties to do an act which by the act is made an offense against the United States, and some act of one or more of the parties in furtherance of the common design that makes the gist of the offense created by the 30th section, and charged in the latter counts of this indictment. They are charged with this conspiracy, and the overt act alleged, as required by the law, is the accepting of the bonds. In order to find them guilty under these counts you must be satisfied that there was this combination. Whether there has been such a conspiracy you are to gather from the circumstances of the case as they have been narrated to you. It is not necessary that there should have been a pecuniary consideration, a definite, absolute contract; but there must have been between them a concert of action, a concert of intent, which makes the offense.

Now I shall not go over the circumstances. They have been fully explained to you. From them all you are to judge whether the latter counts are sustained; whether these men had a corrupt understanding between themselves or with others, or between some one of them and others, that bonds which were false or fraudulent should pass through the collector's office as good. I have in these remarks confined myself to the bonds set out in the indictment. I intend to speak of no other bonds. But other bonds have been proved in the case. They are only to be considered by you as throwing some light on the question of the guilty intent and knowledge of these parties. They tend to show a state of mind in the parties, and afford more or less evidence, as they may be viewed by you, of the corrupt intent which, with the commission of the act, constitutes the offense. There must be a criminal intent, and it must be carried out by some act. If you find the intent, and if you find the act, that intent being to conspire to connect together, and if you find the act committed in pursuance thereof by either one of these defendants, and it is an act charged in the indictment, then they are to be found guilty under the latter counts. If not, then they are to be acquitted. Your verdict in this case, then, must be guilty or not guilty. If you find them not guilty, it is not guilty under all the counts of the indictment. If you find them guilty under any of the first four counts, you will except from your verdict whichever one of those counts you find to be not proven. If you find them guilty on the conspiracy counts, you may find them guilty excepting such of the counts as you may find not proven. You will have the indictment before you, you will have the bonds before you, and you will ascertain from the papers the counts which may apply to each bond.

Now, gentlemen, I do not think it necessary to take up your time further to elucidate this matter. The case is very important. The magnitude of the fraud is extraordinary— $500,000 fraudulent bonds in a single month, passing through a single office, is a startling fact. The importance of acquitting these men, if they are not clearly found guilty, is very great. It is so in every case. An innocent man should never be found guilty. Better a guilty man should escape, far better, than that any innocent man should be convicted. But the importance of convicting them, if guilty, is very great. For you are aware, as we all are aware, of the importance of the emergency of the government in regard to ˙the enforcement of the internal revenue laws. And one office of all these prosecutions, painful as they are, is to teach the officers of the revenue that they must obey the law. They must understand that these laws of the United States are binding on them as well as on the citizens. Until that lesson is learned, no revenue law, framed however wisely and well, will be of any avail. And when that lesson is learned, then, and not until then, is the community safe.

This is a criminal case; and the defendants and each of them, are entitled to the benefit

of every reasonable doubt. If you have any reasonable doubt of their guilt, give them. the benefit of that doubt, and acquit them. If you find from the evidence that they are guilty beyond any reasonable doubt of an intelligent man; if you are thus satisfied ·from the evidence, then it is your duty to find them guilty.

Mr. Hollis here asked the judge to charge the jury that the motive must be to defraud the government of some definite amount of tax to make them guilty. The judge charged that there must have been a criminal intent, or such an amount of carelessness and total indifference as amounted to criminality, in order to make an offence. In regard to some of the bonds the evidence pointed to the defendant, Allen, alone, and did not affect Enright.

Mr. Sanderson—I ask your honor to call the jury's attention to the printed instructions on the bonds.

THE COURT—The documents will be in the hands of the jury for perusal.

I desire further to add that the good character given to the defendants must be taken into consideration, in case the jury were not absolutely satisfied of the guilt of the parties. When any measure of doubt existed, the defendants were entitled to benefit from previous good character, but not otherwise.

The jury retired, and after an absence of three hours, returned with a verdict of guilty on all the counts, but recommended John S. Allen to the mercy of the court. The jury ·were then discharged.

Mr. Sanderson—I ask a stay of proceedings for 30 days to move an arrest of judgment on behalf of Mr. Allen.

THE COURT directed the motion to be made ·in the latter part of the month, and said he would consider whether he would allow Allen to go on his present recognizance.

Mr. Enright was then placed in the custody of Marshal Higgins to be taken to the county jail.